Harvey L. **DAYS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 79–447.

District of Columbia Court of Appeals.

Submitted Nov. 14, 1979.

Decided Dec. 31, 1979.

John E. Ormond, Jr., Washington, D. C., for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was submitted, with whom John A. Terry, Michael W. Farrell, Steven D. Gordon and John J. McDermott, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

PER CURIAM:

■ This is an appeal of an order denying a motion to correct an illegal sentence. Appellant was sentenced to a term of sixteen months to four years' incarceration, upon conviction of one count of prison breach, a violation of D.C. Code 1973, § 22–2601. Appellant contends that his failure to return to his court ordered detention at a halfway house, after expiration of an authorized absence, did not constitute an unlawful escape pursuant to § 22–2601.[1] We disagree and hold that the failure to return to a designated place of custody after an authorized absence is the legal equivalent of escape.

I

The facts are uncontested. At the time of the offense, appellant was in a work-release program which required him to reside at halfway house No. 1 located at 456 C Street, N.W. He had previously been convicted of breaking and entering a vending machine, a violation of D.C. Code 1973, § 22–3427 and received a sentence of eight months to two years' imprisonment. On December 30, 1977, appellant signed out of the halfway house at 7:25 p. m. with authorization to be away until 10:00 p. m. that same evening. When appellant did not reappear at the specified time and place, he was placed on unauthorized leave. After failing to return by January 3, 1978, appellant's status was altered to indicate that he had escaped. Six days later FBI agents found him hiding under a bed in his girl friend's house and arrested him. Appellant was subsequently indicted for prison breach on February 3, 1978.

On May 10, 1978, appellant tendered a plea of guilty to a charge of prison breach in violation of § 22–2601. After sentencing, appellant filed a motion to correct an illegal sentence on the grounds that his failure to

return to the halfway house did not fall within the scope of § 22–2601. That motion was denied and appellant now appeals.

II

■ Section 22–2601, the prison breach statute, provides in pertinent part:

Any person committed to a penal institution of the District of Columbia who escapes or attempts to escape therefrom, or from the custody of any officer thereof or any other officer or employee of the District of Columbia, or any person who procures, advises, connives at, aids, or assists in such escape, . . . shall be guilty of an offense and upon conviction thereof in any court of the United States shall be punished by imprisonment . . ..

This court, on at least three occasions, has interpreted this provision and assumed, although not specifically held, that a failure to return constitutes an escape under the statute. In *Armstead v. United States,* D.C.App., 310 A.2d 255 (1973), the court found that an appellant who had been transferred by the District of Columbia Department of Corrections to a halfway house without a court order, was guilty of escape when he left that site without permission and remained absent until subsequently arrested. In reaching this conclusion, the court explained:

Appellant remained in the custody of the Department at all times and his place of limited confinement in a halfway house was but a substitute for a more structured environment of the minimum security facility from which he was transferred. He remained in a penal institution of the District of Columbia for purposes of the breach of prison statute and did escape therefrom. Accordingly the court did not err in finding that the government had proved beyond a reasonable doubt each element of the offense. [310 A.2d at 256 (footnote omitted).]

1. Appellant also argues that D.C. Code 1973, § 24–465, the work release statute, provides the exclusive punishment for failure to return to a halfway house. While the escape statute and § 24–465 overlap in coverage, it is well settled "that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder,* —— U.S. ——, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Therefore, prosecution of the appellant pursuant to § 22–2601 was proper.

Similarly, in *United States v. Venable*, D.C.App., 316 A.2d 857 (1974), this court reversed the dismissal of indictments against two felons who had departed from a halfway house to which they had been transferred subsequent to a conviction. In reaching its decision, this court held that a halfway house constituted a penal institution within the meaning of D.C. Code 1973, § 22–2601 and characterized the defendants' failure to return as a "escape." *Venable, supra* at 858.

Despite the court's analysis, appellant now attempts to differentiate these cases from his own. Appellant specifically contends that while the defendants' absences in both *Armstead* and *Venable* were totally without permission, his leave was initially authorized. Based on this distinction, appellant now argues that the extension of leave beyond that which is granted is not the legal equivalent of escape.

We find this argument unpersuasive. In *Stewart v. United States*, D.C.App., 370 A.2d 1374 (1977), this court upheld a conviction pursuant to D.C. Code 1973, § 22–2601, where an appellant left a halfway house *with permission,* but failed to reappear at the appropriate hour. Although the court's opinion focuses on the validity of appellant's defense of duress, the affirmance of the conviction implicitly assumes that regardless of whether or not the appellant initially left with or without permission, the extension of an absence beyond that which is specifically authorized is sufficient to establish an unlawful escape. In essence, the conviction in *Stewart* could not have been affirmed without the court's first concluding that the failure to return subsequent to an authorized absence constituted an escape under the statute.

Furthermore, the failure to return after an authorized departure has been held to constitute an escape under federal statute 18 U.S.C. § 751 (1976).[2] Specifically, in *Nace .v. United States,* 334 F.2d 235 (8th Cir. 1964), where a defendant was permitted to go to work with a private employer as part of a Guidance Center Program, but failed to return at the conclusion of the day, the court held that his absence from his designated place of residence at the appropriate time constituted an escape. The court explained its decision stating:

> Whatever may have been the privileges which he was permitted to enjoy, he was nevertheless under the legal restraint of his sentence and in the custody of the Attorney General. His absondment from the restraint and custody was an escape under § 751. [*Nace, supra* at 236.]

In this case, although appellant had been given permission to leave the halfway house for a limited period of time, he was still within the authority and custody of the District of Columbia Department of Corrections. As a result, his failure to return constituted an escape under D.C. Code 1973, § 22–2601.

*Affirmed.*

---

2. This position was considerably strengthened by an amendment to § 4082 of Title 18 passed in 1965. Subsection (d) of the aforementioned provision provides:

> The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General * * *.

In *McCullough v. United States,* 369 F.2d 548 (8th Cir. 1966), the court made clear that § 4082 was not necessary to conclude that failure to return after an authorized leave constitutes escape under 18 U.S.C. § 751 (1976).

In *McCullough, supra,* where the appellant signed out and did not return at the designated time the court stated: "[a]lthough this Court had no difficulty in applying the general escape portions of § 751 to an escape of the type presented herein, § 4082, nonetheless, removes any ambiguity that might, by a strained construction, have existed in the application of § 751 to prisoners who fail to remain within their 'extended limits of confinement.'" *See also Read v. United States,* 361 F.2d 830 (10th Cir. 1966); *United States v. Rudinsky,* 439 F.2d 1074 (6th Cir. 1971); *United States v. Coggins,* 398 F.2d 668 (4th Cir. 1968), upholding convictions for escape even though appellant was initially authorized to leave the premises.