Respondent Steven H. Hofberg was disbarred by the Court of Appeals of Maryland on October 11, 2000, for various acts of severe neglect and other misconduct in nine separate cases.[1] That court noted that respondent engaged in "a disturbing pattern of incompetence; lack of diligence in pursuing a legal matter; failure to apprise his clients of their legal matters and otherwise advise them timely and appropriately about those legal matters; failure to account for funds and property entrusted to him in a fiduciary capacity; and a practice of dissembling to both his clients and to the disciplinary agency charged with the investigation of his actions over a period of time."

Respondent's disbarment was reported to this court, and on October 30, 2000, we temporarily suspended him pursuant to D.C. Bar R. XI, § 11(d), and referred the matter to the Board on Professional Responsibility ("Board"). The Board now recommends that respondent be disbarred as reciprocal discipline. Bar Counsel does not oppose the Board's recommendation. Respondent did not participate in the proceedings before the Board and has not filed any exceptions to the Board's recommendation.

The record in this case does not reveal any of the conditions enumerated in D.C. Bar R. XI, § 11(c), that might make reciprocal disbarment inappropriate. Given the rebuttable presumption in favor of identical reciprocal discipline, see In re Zilberberg, 612 A.2d 832, 834 (D.C.1992), and our heightened deference to the Board when its recommendation is unopposed, see In re Goldsborough, 654 A.2d 1285 (D.C.1995), and D.C. Bar R. XI, § 11(f), we adopt the Board's recommendation. Accordingly, it is

ORDERED that Steven H. Hofberg is disbarred from the practice of law in the District of Columbia forthwith. We note that respondent has not filed the affidavit required by D.C. Bar R. XI, § 14(g); thus, we direct respondent's attention to the requirements of that rule and their effect on his eligibility for reinstatement. See D.C. Bar R. XI, § 16(c).

*So ordered.*

**Melvin CASEY a/k/a Torrey Shields, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 00–CM–1135.

District of Columbia Court of Appeals.

Submitted Dec. 4, 2001.

Decided Jan. 3, 2002.

---

1. Respondent violated Rules 1.1, 1.3, 1.4(a), 1.4(b), 1.5(a), 1.15(a), 1.15(b), 1.16(d), 8.1(b), 8.4(b), 8.4(c), and 8.4(d) of the Maryland Rules of Professional Conduct, and § 10–306 of the Business Occupations and Professions Article of the Annotated Code of Maryland.

Monoranjan Bezbourah, appointed by the court, for appellant.

Terrance W. Gainer, Jr., Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, John R. Fisher and Mary Patrice Brown, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, SCHWELB and WASHINGTON, Associate Judges.

WAGNER, Chief Judge.

Appellant, Melvin Casey (a/k/a Torrey Shields), entered a conditional plea of guilty to one count of possession of a controlled substance (marijuana) (D.C.Code § 33–541(d) (1998)). Casey argues that the trial court erred in denying his motion to suppress evidence. Preliminarily, the government argues that Casey is precluded from appealing because he failed to preserve properly his appeal rights pursuant to Super. Ct.Crim. R. 11. We conclude that Casey adequately preserved the issue for appeal, and we affirm.

## I.

■ The government argues that Casey is precluded from contesting the denial of the motion to suppress because he failed to execute a written reservation specifying the pretrial ruling that he seeks to appeal as required by Super. Ct.Crim. R. 11.

Rule 11(a)(2) provides in pertinent part that:

> With the approval of the Court and the consent of the government, a defendant may enter a plea of guilty ... *reserving in writing the right,* on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea. (Emphasis added.)

This court has instructed that "the reservation of the right to appeal a specified ruling as part of a conditional guilty plea must be set forth in writing." *Demus v. United States,* 710 A.2d 858, 859 (D.C. 1998) (footnote and citation omitted). In *Demus,* the government did not argue that the appellant lost his right to appeal for failure to comply strictly with the rule, and this court resolved the case on the merits. *Id.* However, the court admonished that a party must comply strictly with the rule in the future. *Id.* While no specific procedure was mandated, the court stated that it would be sufficient to specify the ruling preserved for review on the form waiving a trial by jury, which is signed by the defendant, defense counsel, the prosecutor and the judge. *Id.* at n. 3 (citation omitted).

■ In this case, the waiver form does not include a written reservation of the suppression issue. Therefore, the government argues that the holding in *Demus* precludes Casey from contesting the ruling on appeal. The purpose of enforcing the written requirement is to avoid uncertainty about the pretrial ruling reserved for appeal and to assure that all parties and the court had agreed. *See Demus,* 710 A.2d at 859 (citing Advisory Committee Notes to Rule 11, Fed.R.Crim.P., 97 F.R.D. 245, 283 (1983)). Here, the transcript of the plea proceeding shows that Casey reserved the ruling on the motion to suppress and that the court acknowledged the conditional na-

ture of the plea, specifying the exact issue reserved, before accepting it.[1] The prosecutor did not object to the conditional plea nor to the reservation of the suppression issue for appeal. The trial court not only accepted the conditional plea, but also informed Casey, after taking the plea, that he had the right to appeal from the ruling on the motion and that he had thirty days to do so. The transcript shows clearly that all parties agreed that the plea was conditional and that the suppression issue was the only issue reserved. Thus, all the purposes of the rule are met here without the need for confirmation by a separate writing. Under these particular circumstances, we are not inclined to deny Casey access to review of the reserved issue, and we do not think that *Demus* was intended to bar an appeal in this situation. Accordingly, we proceed to consideration of the merits of Casey's appeal.

## II.

The charge arose out of events which occurred on June 20, 2000. At the suppression hearing, Metropolitan Police Investigator Homer Littlejohn testified that he was in the vicinity of 5927 E Street, N.E. that evening, along with members of a vice unit, conducting investigations related to drug complaints. In the rear of that address, the officer observed four people engaged in an illegal craps game. Casey and another person were standing close by watching the game. The police arrested the four people who were playing the game. According to Investigator Littlejohn, he did an identity check of Casey, who was one of the bystanders, in an effort to ascertain whether he lived in the area or had a purpose for being there. The other bystander was also interviewed. Investigator Littlejohn testified that Casey was free to decline to talk to him, but Casey cooperated by telling the officer his name and that he had no identification. The officer testified that while speaking to Casey, he spotted a blue ziplock bag, containing a green weed substance, protruding from Casey's shoe. The officer said that based on his experience, the bag was consistent with packaging used for marijuana. The officer seized the bag, which contained marijuana, and arrested Casey.

Casey testified that the officers stopped "[e]verybody ... who was involved in the crap [sic] game and in close proximity." He said a female officer told him that he could go, but Investigator Littlejohn told him to "hold" and asked whether anyone had checked him. Another officer responded "no," and Investigator Littlejohn then checked Casey's waist, pockets and shoes and found the ziplock bag, which was "down in the bottom of [his] shoe." On cross-examination, Casey testified that the officer did not unholster his weapon or handcuff him and that he was not intimidated by him.

Casey argues that the trial court erred in denying the motion to suppress the drugs because the police officer had no legal justification for stopping and arresting him. He contends that a seizure occurred and that at the time of the seizure, the police did not have reasonable articulable suspicion for a stop or probable cause for an arrest. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

---

1. At the plea proceeding, the following exchange between the court and defense counsel took place concerning the conditional nature of the plea:

    [Defense Counsel]: ... We are entering this plea on with the reservation on the—

    THE COURT: On the motion to suppress?
    [Defense Counsel]: Yes, exactly.
    THE COURT: So it is a conditional plea. Okay. All right. Okay.

The government concedes, and we accept for purposes of the disposition of this case, that a seizure would not have been justified before the officer observed Casey in possession of marijuana. The government argues, however, that the initial encounter between the police officer and Casey was consensual and that it was during this permissible encounter that the officer acquired information which provided probable cause for the seizure of the drugs. The trial court concluded that no seizure occurred and denied the motion. Thus, we must determine whether the record supports the trial court's determination that the police did not violate Casey's rights under the Fourth Amendment.

"A seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The police can approach a citizen, even without any basis for suspecting him of committing a crime, ask questions and request to see identification. *Id.* at 435, 111 S.Ct. 2382 (citing *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). The critical question for Fourth Amendment purposes is whether, considering the circumstances of the encounter, the police conduct would have communicated to a reasonable person that compliance with the request was required. *In re J.M.*, 619 A.2d 497, 499–500 (D.C.1992) (en banc) (citing *Florida v. Bostick, supra*, 501 U.S. at 437, 111 S.Ct. 2382). Whether a seizure has occurred for Fourth Amendment purposes is a question of law which we review *de novo*, while deferring to the trial court's factual findings, unless clearly erroneous. *Id.* at 500, 111 S.Ct. 2382 (citing *Guadalupe v. United States*, 585 A.2d 1348, 1352 n.

7 (D.C.1991)). Applying that standard, we review the trial court's ruling.

Here, the trial court found "the officer's testimony simply that he walked over and asked [Casey] for his name and address to be credible in this case." The court made an explicit finding that Casey's testimony was not credible.[2] The court also explained that the officer displayed no force, that Casey testified that he had not been intimidated, and that he could have walked away. Therefore, the court concluded that the circumstances did not amount to a seizure and denied the motion. In making its ruling, the trial court resolved the conflicting testimony, which is within its province. *See Brown v. United States*, 590 A.2d 1008, 1020 (D.C.1991). Its factual findings concerning the circumstances of the encounter are supported by the evidence; therefore, we accept them. *See Dickerson v. United States*, 677 A.2d 509, 512 (D.C.1996) (citing *Lawrence v. United States*, 566 A.2d 57, 60 (D.C.1989)). The court found, consistent with the evidence which it credited, that the encounter was non-coercive, unintimidating and basically consensual.

On these facts, there is a sound basis for the trial court's legal conclusion that no seizure occurred. *See Richardson v. United States*, 520 A.2d 692, 697 (D.C.1987), *cert. denied*, 484 U.S. 917, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987). In *Richardson*, the police officers pulled up next to the defendant and said, "Police, wait a second. We want to talk to you." 520 A.2d at 697. There was no indication of threatening language, a commanding tone, or physical force before the defendant discarded a pill box and attempted to flee. *Id.* Absent such intimidating circumstances, as de-

---

**2.** In ruling initially on the motion, the trial court credited the testimony of the police officer, but stated that even if it credited Casey's testimony concerning the stop, it did not conclude that the officer's request that he "hold" amounted to a detention.

scribed in *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870 (1980) (plurality opinion), we affirmed the trial court's conclusion that no seizure had occurred and its denial of the motion to suppress. *Richardson,* 520 A.2d at 697. Similarly, in this case, we find no seizure before the police officer spotted the contraband in Casey's shoe.

▮ Under the Fourth Amendment's plain view doctrine, a police officer is permitted to seize observable "illegal or evidentiary items" provided the officer "has some prior Fourth Amendment justification and ... probable cause to suspect that the item is connected to criminal activity." *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) (citations omitted). "Contraband in plain view of the police is subject to seizure and admissible into evidence, provided the officer has a right to be in a position to view it." *Hicks v. United States,* 705 A.2d 636, 640 (D.C.1997) (citing *Vance v. United States,* 399 A.2d 52, 58 (D.C.1979) (citation omitted)). This doctrine is based "on the

proposition that once police are lawfully in a position to observe an item firsthand, its owner's privacy interest in that item is lost...." *Andreas,* 463 U.S. at 771, 103 S.Ct. 3319. In this case, the justification for the officer being in a position to view the contraband was the encounter which the trial court properly determined was not a seizure, but a permissible consensual encounter. Therefore, the police officer was lawfully in a position to see the contraband and seize it.[3] Accordingly, the trial court determined properly that the seizure of the drugs in plain view did not violate Casey's rights.

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*

▮

---

**3.** From his experience, the officer recognized the distinctive packaging of the item containing the weed substance as used in the drug trade to hold marijuana. Such observations are sufficient to support a finding of probable cause. *In re J.D.R.,* 637 A.2d 849, 850–51 (D.C.1994).